CORNELIUS KAHLEN et al., Appellants, *v.* THE STATE OF NEW YORK, Respondent.

Eminent domain — Barge Canal Terminal Act — Court of Claims — when land is actually taken in condemnation proceeding by the state, owner cannot be compelled to take it back with damages for its detention only — erroneous decision by Court of Claims dismissing claim for property taken by state for canal terminal on the ground that, after appropriating property, the canal board had rescinded and canceled the appropriation.

1. Once land is actually taken in a condemnation proceeding by the state, the owner cannot be compelled to take it back, with damages for its detention only. The legislature may refuse to permit the condemnor to discontinue or abandon his proceedings without being held for full compensation at an earlier date, or it may provide that the taking shall not be complete without payment or possession, but it is powerless to say that after the taking. is complete there can be no recovery.

2. Under the Barge Canal Terminal Act (L. 1911, ch. 746, §§ 6 and 8) the state may appropriate lands and other property for Barge canal terminals and the state engineer may with the approval of the canal board, and in conformity with the procedure required by the statute, take possession of and use lands, structures and waters described in the statute, and such others as may in his judgment be necessary, for Barge canal terminals and purposes authorized by the statute, and from the time of the service upon the owner of the notice required by the statute, the entry upon and the appropriation by the state, of the property described in the notice, shall be deemed complete and such notice so served shall be conclusive evidence of such entry and appropriation and of the quantity and boundaries of the property appropriated. The Court of Claims thereupon has jurisdiction to determine the amount of compensation for lands, structures and waters so appropriated.

3. Where the state has taken property under, and in conformity with, the Barge Canal Terminal Act, and all the acts required for the appropriation of the lands were completed, it cannot oppose the claim for the property taken because, over twenty-two months after the claim for compensation was filed, the canal board had passed a resolution rescinding and canceling the appropriation, and, hence, the Court of Claims, affirmed by the Appellate

Division, is in error in holding that the title of the property had not vested in the state at the time of its appropriation; that the canal board could rescind and had rescinded the prior taking, and that the claim should be dismissed.

*Kahlen* v. *State of New York,* 181 App. Div. 961, reversed.

(Argued May 1, 1918; decided May 14, 1918.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered January 10, 1918, unanimously affirming a judgment of the Court of Claims, dismissing the plaintiffs' claim upon the merits.

The facts, so far as material, are stated in the opinion.

*Joseph A. Kellogg* and *Arnold J. Potter* for appellants. Upon the approval by the canal board of the state engineer's certificate of necessity, together with the filing and service of the appropriation map and notice of appropriation, the taking of the lands and rights described therein becomes complete. A compulsory sale has been effected by the state and the rights of the parties are fixed. (*People* v. *Adirondack Ry. Co.,* 160 N. Y. 225; *Jackson* v. *State,* 213 N. Y. 34; *People* v. *Fisher,* 190 N. Y. 468; *United Traction Co.* v. *Ferguson Cont. Co.,* 117 App. Div. 305; *Van Alstine* v. *Belden,* 41 App. Div. 123; 161 N. Y. 661.) The state engineer and the canal board have no powers except those conferred by the statute. This act gives no authority to them to rescind a prior appropriation or to review and annul former acts. (*People ex rel. Graves* v. *State,* 207 N. Y. 450; *Danolds* v. *State,* 89 N. Y. 36; *People ex rel. Best* v. *Preston,* 62 Hun, 185; 131 N. Y. 644; *United States* v. *Bank of Metropolis,* 40 U. S. 377; *Matter of Palisades Interstate Park,* 216 N. Y. 104; *Browning* v. *Collis,* 21 Misc. Rep. 155; *People* v. *Fisher,* 190 N. Y. 468.) Property having been acquired under appropriation as provided for in section 8 of the Terminal Act, the canal board is without power to divest

the state of the lands thus acquired or to compel the former owner to repurchase. (*Halfmoon Bridge Co.* v. *Canal Board,* 91 Misc. Rep. 600.)

*Merton E. Lewis, Attorney-General* (*Edmund H. Lewis* and *Anson Getman* of counsel), for respondent. The title to land appropriated under the Barge Canal Terminal Law vests in the state at the time when compensation to be paid therefor is fixed or when the Statute of Limitations has run against a claim for such compensation. (*Adirondack Woolen Co.* v. *State,* 10 State Dept. Rep. 16; *Kennedy* v. *Indianapolis,* 103 U. S. 599; *Matter of Military Parade Ground,* 60 N. Y. 319; *Rexford* v. *Knight,* 15 Barb. 627; 11 N. Y. 308; *Ballou* v. *Ballou,* 78 N. Y. 325; *Cherokee Nation* v. *S. K. R. R. Co.,* 135 U. S. 641; Lewis on Em. Domain [3d ed.], § 705; *Matter of Mayor,* etc., 40 App. Div. 281; *Matter of N. Y. El. R. Co.,* 12 N. Y. Supp. 857.) The canal board had the power to rescind the appropriation upon the report of the state engineer that no part of the lands embraced within appropriation map T-83 was necessary for Barge canal terminal purposes. (*Matter of Military Parade Ground,* 60 N. Y. 319; *People ex rel. Gas Light Co.* v. *Common Council,* 78 N. Y. 56; *Matter of Commissioners of Palisades Interstate Park,* 216 N. Y. 104; *People ex rel. G. L. Co.* v. *Common Council,* 78 N. Y. 56.)

POUND, J. This claim arose upon the appropriation by the state of New York for the purpose of acquiring a portion of the site for the construction of a port of call, as directed by the Barge Canal Terminal Act (Chapter 746 of the Laws of 1911), of certain lands and the riparian rights appurtenant thereto located in the twelfth ward in the city of New York, fronting upon and adjacent to the Hudson river, at the northerly end of the island of Manhattan.

All the acts required for the appropriation of the

25

lands were completed. The claimants' title is not disputed. After the appropriation the claimants filed their claim for the value of the lands appropriated. The claim was opposed by the state because over twenty-two months after the claim was filed, the canal board had passed a resolution rescinding and canceling the appropriation. The Court of Claims held that the title of · the property had not vested in the state at the time of its appropriation; that the canal board could rescind and had rescinded the prior taking; and that the claim should be dismissed. This determination was unanimously affirmed by the Appellate Division.

The Barge Canal Terminal Act is not mandatory in its direction as to the establishment of a port of call on the property appropriated. (Sections 6 and 9.) The location thereof might be changed by the canal board upon the recommendation of the· state engineer. But the question is whether the actual appropriation of the claimants' land fixed the obligation of the state to make compensation therefor. The procedure for acquiring lands for Barge· canal terminals is defined by section 6 and·section 8 of the act which read as follows:

" § 6. * *. ' * Lands and other property of owners other than the city of New York shall be acquired as provided in section eight of this act."

" § 8. The state engineer may, with the approval of the canal board and subject to the following conditions and subject to the other provisions of this act, enter upon, take possession of and use lands, structures and waters specifically described in this act, and such others, the appropriation of which for the barge canal terminals or for the utilization and full control by the state or 'for the purposes authorized by this act shall in his judgment be necessary. Accurate surveys and maps of all such lands, structures and waters shall be made by the state engineer, who shall annex thereto

his certificate that the lands, structures and waters therein described are necessary for the barge canal terminals. If the same shall be approved by the canal board such maps, surveys and certificates shall be filed in the office of the state engineer and duplicate copies thereof, duly certified by the state engineer to be such duplicate copies, shall also be filed in the office of the superintendent of public works. *The superintendent of public works shall thereupon serve upon the owner of any property so appropriated a notice of the filing and of the date of filing of every such map, survey and certificate in his office, which notice shall also specifically describe the portion of such property belonging to such owner which by the said approval of the canal board has been so appropriated for the use of the canal terminals of the state.* If the superintendent of public works shall not be able to serve said notice upon the owner personally within this state after making efforts so to do, which in his judgment are under the circumstances reasonable and proper, he may serve the same by filing it with the clerk of the county wherein the property so appropriated is situated. *From the time of the service of such notice the entry upon and the appropriation by the state of the property described for the purposes above described shall be deemed complete, and such notice so served shall be conclusive evidence of such entry and appropriation and of the quantity and boundaries of the property appropriated. The superintendent of public works may cause a duplicate copy of such notice, with an affidavit of due service thereof on such owner, to be recorded in the books used for recording deeds in the office of the county clerk of any county in the state where any of the property described in such notice is situated, and the record of such notice and such proof of service shall be prima facie evidence of the due service thereof. The court · of claims, or the board, if any, succeeding to its powers and duties, or by which it is or may be*

*superseded, shall have jurisdiction to determine the amount of compensation for lands, structures and water so appropriated.*"

No statutory provision opens the door for retreat after the state has once appropriated property under the provisions of this act. The state engineer and the canal board have no express authority to rescind a prior appropriation of lands for canal purposes nor does such authority exist by necessary implication. The statute is clear. The appropriation is deemed complete from the time of the service of the notice which is made conclusive evidence of the taking and is binding on all concerned. When the lands are appropriated the owners are entitled to have their damages assessed and paid in money. "It is a compulsory purchase by public authority, and the individual receives money in the place of the property taken" (*People* v. *Adirondack Ry. Co.*, 160 N. Y. 225, 238), and has a right to insist upon payment. (*Jackson* v. *State of N. Y.*, 213 N. Y. 34, 35, 36.) Service of the notice of appropriation, under the provisions of the statute, is "the vital act appropriating the lands for which the state must pay." (*Ontario Knitting Co.* v. *State of N. Y.*, 205 N. Y. 409, 417.) "As to the quantity of estate acquired by the state, (for the use of the state canals) I entertain no doubt that it is a fee simple." (*Rexford* v. *Knight*, 11 N. Y. 308, 314.)

The state now contends that the title to land appropriated under the Barge Canal Terminal Law vests in the state only when the compensation to be paid therefor is fixed or when the Statute of Limitations has run against a claim for such compensation, and that the state may abandon the appropriation at any time before title vests. The substance of this contention is that there has been no permanent appropriation of claimants' lands; and, therefore, the claimants have no vested right to compensation except as damages for detention only.

This claim presents an extreme view of the conditions imposed by implication upon the power of eminent domain; rests on no statute and is in conflict with the cases cited to sustain it. Attention is thus called anew to the grave detriment to the very existence of government which might result from interference with the right of the state to take private property for public use and also to the ·importance of protecting private rights in the exercise of such power.

The act contains no clause expressly declaring at what state of the proceedings the owner's title is divested, and it has been held in this state that under the provisions of chapter 262, Laws of 1817, "the first efficient statute under which our great system of internal improvements was commenced" (15 Barb. 627, 642), the fee did not vest in the state until the payment of the compensation. (*Rexford .v. Knight,* 11 N. Y. 308, 314.) The reason for so holding was that the statute so provided — not that the state was thus constitutionally restricted. The case held also that the *appropriation* was complete and constitutional although evidenced only by actual occupation of the lands for canal purposes without prior payment of compensation.

Private property shall not be taken for public use without just compensation. (N. Y. Const. art. 1, § 7.) This limitation does not deny the power of the state to take to itself for its own public use the absolute title .to specific private property, provided the statute recognizes the absolute right of the owner, upon the taking of the property, to just compensation and makes provision for the prompt determination and payment of such compensation from the public funds. (*Rexford v. Knight, supra; Sweet v. Rechel,* 159 U. S. 380, 404; *Crozier v. Krupp,* 224 U. S. 290, 305, 306.) No other limitations are placed upon the right to take. Compensation is not a condition precedent to a valid appro-

priation.   In this case the appropriation was not tentative
or temporary.   It was " complete."   The plain inference
and clear implication is that the state had taken all and
could take no more and that the appropriation of lands
for Barge canal terminal purposes had vested the title
in the state.   Canal Law (Cons. Laws, ch. 5), section 83,
provides that " The title to all real property permanently
appropriated for the use of the canals of the state shall
be vested in the people of this state."   The fee having
once passed to the state, neither the state engineer, the
canal board nor the legislature could deprive the owners
of their constitutional right to compensation in money.

But there is a further sufficient answer to the state's
contention.   Once the land is actually taken, the owner
cannot be compelled to take it back, with damages for
its detention only.   (*Hellen* v. *City of Medford*, 188 Mass.
42; *Kelly* v. *City of Waterbury*, 83 Conn. 270; *Wood* v.
*Trustees of State Hospital*, 164 Penn. St. 159.)   The
state may contend that the fee to claimants' land has
not vested in the state.   That does not help the situation.
A time comes when the right to compensation is fixed.
That time is when the taking or appropriation is com-
plete.   " The taking and a fixed right to compensation
must coincide."   (*Chicago, M. & St. P. R. R. Co.* v.
*Wisconsin*, 238 U. S. 491, 500.)   The legislature may
refuse to permit the condemnor to discontinue or abandon
his proceedings without being held for full compensation
at an earlier stage, or it may provide that the taking shall
not be complete without payment or possession (*York
Shore Water Co.* v. *Card*, 102 Atl. Rep. 321), but it is
powerless to say that after the taking is complete there
can be no recovery.   (*Matter of Commissioners of Pal-
isades Interstate Park*, 216 N. Y. 104.)   No conflict
in principle arises in the reported cases although the
conclusions reached are not in harmony.   A diversity
of opinion exists on the question *when* the rights of

the parties become vested. An apparent conflict in authorities sometimes arises out of the fact that the state does not delegate its full power of eminent domain, except to its own governmental agencies, such as cities, and not always to them, and that the right to take and to abandon is limited by differing statutory regulations, but we are dealing here with eminent domain in its freest sense, unfettered by any restriction other than those imposed by the Constitution itself.

The right of eminent domain is an attribute of sovereignty which requires no constitutional recognition and is unrestricted except by constitutional limitations. (*Boom Co.* v. *Patterson,* 98 U. S. 403, 406.) It springs from the necessities of government. But the necessity extends to the taking only. The state may well exist without the power to abandon what it has taken without making just compensation. The obligation to reimburse rests upon the constitutional right of the individual. When the state solemnly appropriates the property of the citizen for a great public need without paying compensation in advance, it is not contemplated that it will say that it has not taken the property; that it no longer needs it; that the owner must take it back because he has no vested right to compensation. No statutory authority to abandon existed at the time of the taking of claimants' land; the state took the complete title; the right to compensation became vested. The elementary requirements in favor of property rights inflexibly forbid the state to change its sovereign mind.

The judgment should be reversed and the determination of the Court of Claims reversed, and a new hearing granted before the Court of Claims, with costs to claimants in all courts to abide event.

HISCOCK, Ch. J., COLLIN, CARDOZO, CRANE and ANDREWS, JJ., concur; CUDDEBACK, J., dissents.

Judgment accordingly.