Slaughter v City of New York (2020 NY Slip Op 06972)





Slaughter v City of New York


2020 NY Slip Op 06972


Decided on November 24, 2020


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: November 24, 2020

Before: Friedman, J.P., Manzanet-Daniels, Oing, Mendez, JJ. 


Index No. 109963/07 Appeal No. 12466 Case No. 2019-3383 

[*1]Lisa S. Slaughter, etc., Plaintiff-Appellant,
v
The City of New York et al., Defendants-Respondents, The City of New York Housing Preservation & Development et al Defendants.


Bisogno & Meyerson, LLP, Brooklyn (Elizabeth Mark Meyerson of counsel), for appellant.
James E. Johnson, Corporation Counsel, New York (Ellen Ravitch of counsel), for The City of New York, respondent.
Rivkin Radler LLP, Uniondale (Cheryl F. Korman of counsel), for Convent Avenue Family Living Facility and West Harlem Group Assistance, Inc., respondents.
Goldberg Segalla LLP, Garden City (Edward V. Schwendemann of counsel), for WEHSCO/West End Hub & Spring Company, respondent.
Lewis Johs Avallone Aviles, LLP, New York (Stephen R. Macho of counsel), for Lodging Kit Company, respondent.



Order, Supreme Court, New York County (Lyle E. Frank, J.), entered March 18, 2019, [*2]which granted defendants Lodging Kit Company's, WEHSCO/West End Hub & Spring Company's, Convent Avenue Family Living Facility (CAFLF) and West Harlem Group Assistance, Inc.'s, and the City's motions for summary judgment dismissing the complaint as against them, unanimously modified, on the law, to deny CAFLF and West Harlem's motion as to CAFLF, and otherwise affirmed, without costs.
Plaintiff's decedent Philip Morris (Philip) was rendered a quadriplegic, and died within a few months, after he fell from the unguarded top bunk bed at a temporary housing shelter run by CAFLF pursuant to a contract with the City. CAFLF is a subsidiary of West Harlem Group Assistance, Inc., which plaintiff alleges served as the shelter's property manager. WEHSCO manufactured and delivered the bunk bed to the shelter. Lodging Kit Company sold the bed to CAFLF.
Summary judgment should be denied to CAFLF. An unguarded top bunk is not an inherently dangerous instrumentality, and a property owner or manager has no duty to install guardrails absent notice that an unguarded top bunk presents a dangerous condition. However, Ida Morris, Philip's late wife, testified that she and Philip had complained to a CAFLF social worker about the lack of guardrails before Philip's accident. CAFLF's maintenance director testified that he and his staff knew it was dangerous for anyone to sleep in an unguarded top bunk and that they installed guardrails on top bunks that were going to be slept in. While the breach of an internal policy that transcends the duty of reasonable care cannot be considered evidence of negligence (Pomahac v TrizecHahn 1065 Ave. of Ams., LLC, 65 AD3d 462, 465 [1st Dept 2009]), this testimony raises an issue of fact as to whether CAFLF knew or should have known that the unguarded top bunk from which Philip fell was dangerous and, if so, whether CAFLF breached its duty to exercise reasonable care by failing to install a guardrail on the top bunk before Philip's accident.
The complaint was correctly dismissed as against CAFLF's parent company, West Harlem, because there is no evidence that West Harlem either had notice of or appreciated the danger posed by the unguarded top bunk from which Philip fell (see Bentivegna v Investment Props. Assoc., 180 AD2d 500 [1st Dept 1992]).
Nor is there evidence that the City had any notice of a dangerous condition of the bunk bed (see e.g. Frederick v New York City Hous. Auth., 172 AD3d 545, 545 [1st Dept 2019).
The federal regulations on which plaintiff relies with respect to WEHSCO and Lodging Kit do not apply to bunk beds manufactured solely for institutional use (16 CFR 1213.1[b]; 1513.1[b]). The record shows that the bunk bed from which Philip fell was manufactured solely for institutional use. Moreover, these regulations are intended "to reduce or eliminate the risk that children will die or be injured from being trapped between the upper bunk and the wall, or in openings below guardrails, or in other structures in the bed" (16 CFR 1213.1[a]; 1513.1[a]). As Philip was not a child, a violation of the regulations could not support a finding of liability against WEHSCO and Lodging Kit (Chester Litho, Inc. v Palisades Interstate Park Commn., 33 AD2d 202, 205 [3d Dept 1969], affd 27 NY2d 323 [1971]; see also O'Leary v American Airlines, 100 AD2d 959 [2d Dept 1984]).
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: November 24, 2020